UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STROITELSTVO BULGARIA LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 08 C 3056 |
| ) | |
| THE BULGARIAN-AMERICAN ) | Judge Ruben Castillo |
| ENTERPRISE FUND, and THE ) | |
| BULGARIAN-AMERICAN CREDIT BANK, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Stroitelstvo Bulgaria Ltd. ("Plaintiff"), a Bulgarian company, seeks to recover for damages to its business and property allegedly caused by the Bulgarian-American Enterprise Fund ("BAEF") and the Bulgarian-American Credit Bank ("Bank") (collectively "Defendants"). (R. 22, Pl.'s First Am. Compl. ¶ 2.) Plaintiff alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, along with claims for breach of contract, intentional interference with contract, intentional interference with prospective advantage, breach of fiduciary duty, abuse of process, violation of Bulgarian law, and civil conspiracy. (*Id.* ¶¶ 3-4, 55-113.) Defendants move to dismiss based on lack of personal jurisdiction, improper venue, insufficient process, insufficient service of process, failure to state a claim for relief, and alternatively, under the doctrine of forum non conveniens. (R. 58, 59, 60.) For the following reasons, the Court dismisses this action under the doctrine of forum non conveniens.

1

**RELEVANT FACTS**

Plaintiff is a corporation organized under the laws of Bulgaria. (R. 22, Pl.'s First Am. Compl. ¶ 5.) BAEF is a non-profit corporation established pursuant to the Support for East European Democracy Act ("SEED Act"),[1] 22 U.S.C. §§ 5402, 5421. (*Id.* ¶ 6.) BAEF commenced its operations in 1992 with $58 million in funding from the American government. (*Id.*) BAEF is based in Chicago, and at all pertinent times also maintained an office in Sofia, Bulgaria. (*Id.*) BAEF is the parent company of the Bank, a Bulgarian joint stock company registered under the Bulgarian Trade Act. (*Id.* ¶ 7.) The Bank commenced operations in May 1997, and its sole purpose is to lend money to small and medium sized enterprises in Bulgaria. (*Id.*)

Plaintiff designed and undertook a residential construction project in Sofia and on March 24, 2005, executed a loan agreement with the Bank to help finance this project ("Loan Agreement"). (*Id.* ¶¶ 9-10.) The Loan Agreement was executed in Sofia, and provides that it is to be governed by and construed in accordance with Bulgarian law. (*Id.* ¶ 10 & Ex. A § 17.07.) Plaintiff alleges that on November 11, 2005, the Bank wrongfully and without cause suspended credit and asserted a default under the Loan Agreement, along with the right to recover 970,438 euro. (*Id.* ¶ 19.) As a result of these actions, Plaintiff alleges substantial injuries, including the withdrawal of project unit purchasers from their contracts and the loss of members of its construction team. (*Id.* ¶¶ 25-29.) On December 12, 2005, the Bank, proceeding *ex parte*, obtained a decree of execution from the Sofia City Court in the amount of 970,438 euro, which the Bank used to attach and freeze Plaintiff's assets. (*Id.* ¶¶ 31, 36-37.) On May 9, 2006, under

---

[1] The SEED Act was enacted in 1989 to provide "cost-effective assistance to those countries of Eastern Europe that have taken substantive steps toward institutionalizing political democracy and economic pluralism." 22 U.S.C. § 5401(a).

the alleged "duress" created by the Bank's improper suspension of credit and the Sofia City Court's enforcement of the judgment, Plaintiff took out another loan from the Bank in order to repay the amount ordered by the decree of execution. (*Id.* ¶¶ 34-35.) Plaintiff alleges that the Bank's actions constituted "extortion, blackmail, bank fraud and predatory lending" and that the Bank has engaged in "a pattern of racketeering activity as defined in 18 U.S.C. § 1961(l)." (*Id.* ¶ 38.) Plaintiff further claims that BAEF had a duty to supervise the actions of the Bank, and that in failing to do so, permitted the improper use of U.S. funds. (*Id.* ¶¶ 49, 52-53.)

## PROCEDURAL HISTORY

On April 4, 2007, Plaintiff filed this action in the U.S. District Court for the District of Columbia. (R. 1, Pl.'s Compl.) Defendants moved to dismiss under Federal Rules of Civil Procedure 9(b), 12(b)(2), 12(b)(6) and the doctrine of forum non conveniens, or alternatively, to transfer the case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). (*See* R. 10-12.) Shortly thereafter, Plaintiff filed an amended complaint. (R. 22, First Am. Compl.) On April 29, 2008, the District Court granted Defendants' motion to transfer the case to this Court. (R. 38, Order.)

Defendants now move to dismiss on numerous grounds, including lack of proper service under the Hague Convention, lack of personal jurisdiction over the Bank, and failure to state a claim for relief. (R. 59, BAEF's Mot. to Dismiss; R. 60, Bank's Mot. to Dismiss.) Defendants also jointly move for dismissal under the doctrine of forum non conveniens, arguing that the parties' dispute should be litigated in Bulgaria rather than in the United States. (R. 58, BAEF's Mot. to Dismiss.)[2]

---

[2] The Bank adopts the forum non conveniens arguments advanced by BAEF. (R. 60, Defs.' Mot. to Dismiss at 13.)

3

## ANALYSIS

The common law doctrine of forum non conveniens allows the Court to dismiss a case over which it would normally have jurisdiction if doing so "best serves the convenience of the parties and the ends of justice." *Kamel v. Hill-Rom Co., Inc*, 108 F.3d 799, 802 (7th Cir. 1997) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)). In *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007), the U.S. Supreme Court expanded the doctrine, concluding that "a district court has discretion to respond at once to a defendant's *forum non conveniens* plea, and need not take up first any other threshold objection," including questions of personal or subject matter jurisdiction, if it determines that "a foreign tribunal is plainly the more suitable arbiter of the merits of the case." *Id.* at 425. Put simply, a court can bypass jurisdictional issues and proceed directly to a forum non conveniens motion where it is appropriate to do so. *Id.* Indeed, where it is easier to consider the issue of forum non conveniens than to determine jurisdiction, it is proper to take the "less burdensome course." *Id.* at 436. Because that is the case here, the Court proceeds directly to Defendants' forum non conveniens motion.

## I. Forum Non Conveniens Analysis

"Dismissal for forum non conveniens reflects a court's assessment of a range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." *Sinochem*, 549 U.S. at 429. Under the doctrine of forum non conveniens, a case may be dismissed only when two conditions are met: (1) there is an available and adequate alternative forum that has jurisdiction over the case; and (2) the balance of private and public interest factors weighs in favor of dismissal. *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008); *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702,

4

703-04 (7th Cir. 2005). The defendant bears the burden of persuading the Court that a case should be dismissed on forum non conveniens grounds. *In re Ford Motor Co.*, 344 F.3d 648, 652 (7th Cir. 2003). There is typically a strong presumption in favor of a plaintiff's choice of forum, especially when the plaintiff has chosen her home forum, and thus, a defendant seeking dismissal on grounds of forum non conveniens "bears a heavy burden." *Sinochem*, 549 U.S. at 430.

Nevertheless, when a foreign plaintiff has chosen to litigate in the United States, this presumption applies with considerably less force, and the assumption that the chosen forum is appropriate is "less reasonable." *Id.*; *see also Clerides*, 534 F.3d at 628 ("[A foreign plaintiff's] choice of the United States as a forum should be accorded less deference than if the choice is made by a United States plaintiff."). Here, Plaintiff is not a U.S. citizen or corporation, but is instead a Bulgarian company with its offices located in Bulgaria. This district is not Plaintiff's "home" forum, and thus, Plaintiff's decision to litigate in the United States is entitled to less deference. *See U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 751 (7th Cir. 2008) ("A foreign company that chooses to sue in the United States rather than in its own country is unlikely to experience inconvenience if the court invokes forum non conveniens against it."). With this in mind, the Court turns to an analysis of the specific factors governing dismissal under the doctrine of forum non conveniens.

A.   **Alternative Forum**

The Court must first determine whether an alternative forum exists for this dispute. *Clerides*, 534 F.3d at 628; *Bridgestone*, 420 F.3d at 704. In making this determination, both the availability and the adequacy of the proposed alternative forum should be assessed. *Bridgestone*, 420 F.3d at 703.

5

### 1. Availability

A forum is considered to be "available" if "all parties are amenable to process and are within the forum's jurisdiction." *Bridgestone*, 420 F.3d at 703. It appears that under Bulgarian law, Defendants would be amenable to process in Bulgaria and within the jurisdiction of the Bulgarian courts, and Plaintiff does not argue otherwise. Although BAEF is headquartered in Chicago and incorporated in Delaware, it asserts that it is in fact subject to jurisdiction in Bulgaria, given that Bulgarian courts have jurisdiction over corporations that transact business in Bulgaria, as well as entities that have caused injuries to a party in Bulgaria. (R. 58, BAEF's Mot. at 6; *id.*, Ex. 2 ¶¶ 16-18.) To remove any doubt, BAEF has agreed to consent to the jurisdiction of the Bulgarian courts as a condition of dismissal. (R. 58, BAEF's Mot. at 6.) A party's express consent to a forum's jurisdiction obviates any concern about availability. *See Kamel*, 108 F.3d at 803 (Saudi Arabia an available forum where defendants expressly agreed to consent to jurisdiction of its courts); *In re Air Crash Near Athens, Greece*, 479 F. Supp. 2d 792, 797 (N.D. Ill. 2007) (granting dismissal where defendants agreed to submit to jurisdiction of foreign court). The Bank, as a Bulgarian company with its offices located exclusively in Bulgaria, would also be amenable to process and within the Bulgarian court's jurisdiction. (R. 60, Bank's Mot., Ex. 2 at ¶¶ 16-18.) Accordingly, the Court concludes that Bulgaria is an available forum.

### 2. Adequacy

A forum is "adequate" if "the parties will not be deprived of all remedies or treated unfairly." *Bridgestone*, 420 F.3d at 704. An alternative forum will be considered adequate even where it does not offer the same theories of recovery as courts in the United States. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250-54 (1981); *Kamel*, 108 F.3d at 803. Only when the

"remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all" will the forum be deemed inadequate. *Piper Aircraft*, 454 U.S. at 254. A court may find an alternative forum adequate as long as there is "some potential avenue for redress." *Kamel*, 108 F.3d at 803.

Plaintiff argues that Bulgaria is an inadequate forum for the following three reasons: (1) the filing fee imposed by Bulgarian courts is prohibitively high; (2) the claims in the present case are beyond the administrative and substantive capacity of the Bulgarian courts; and (3) the Bulgarian courts are "too tainted with corruption." (R. 65, Pl.'s Mem. Opp'n at 17.) Defendants counter each of these arguments, and assert that Bulgaria is fully adequate to adjudicate this dispute.[3]

### a. Filing Fee

Plaintiff first argues that the four percent filing fee imposed by the Bulgarian courts is so high as to be prohibitive, thus making litigation in Bulgaria unfeasible. (R. 65, Pl.'s Mem. in Opp'n 17-19.) Because Plaintiff is seeking in excess of $30 million in damages from

---

[3] Defendants also argue that by agreeing to a forum selection clause in the Loan Agreement that requires disputes to be litigated in Bulgaria, Plaintiff waived any objection to the cost of litigating in Bulgaria. (R. 69, BAEF's Reply at 3.) Defendants contend that Plaintiff's agreement to the forum selection clause "should end any inquiry on adequacy." (*Id.* at 2.) Plaintiff, in turn, challenges the enforceability of the forum selection clause. (R. 64, Pl.'s Mem. Opp'n at 9.) Although the Court could not resolve this dispute without first resolving the myriad of issues pertaining to service and personal jurisdiction, it is safe to assume that even if the Court did reach this issue, the forum selection clause itself would not end the Court's inquiry. The Supreme Court has held that a forum selection clause will not be enforced if it would be "unreasonable and unjust" to do so. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *see also AAR Int'l, Inc. v. Nimelias Enter, SA*, 250 F.3d 510, 525 (7th Cir. 2001) (holding that a forum selection clause is unenforceable when "the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court"). Thus, the Court would be required in any event to consider whether the Bulgarian courts provide an adequate forum for this dispute. The Court notes additionally that BAEF is not a party to the Loan Agreement and so it is questionable whether it can rely on the forum selection clause in any event. The District Court in the District of Columbia determined as much when ruling on Defendants' motion to transfer. (R. 38, Order at 2 n.3.)

Defendants, a four percent filing fee would amount to $1.2 million. (*See* R. 22, First Am. Compl. at 20.) This filing fee is recoverable, along with other incurred expenses, if Plaintiff ultimately prevails in the litigation. (R. 58, BAEF's Mot., Ex. 4 at 135.)

The costs of suing abroad must be considered by the Court in deciding whether to dismiss under the doctrine of forum non conveniens. *Macedo v. Boeing Co.*, 693 F.2d 683, 690 (7th Cir. 1982). Although the Seventh Circuit has not decided this precise issue, numerous courts have held that filings fees, even when substantial, do not render a foreign legal system inadequate. For example, the Ninth Circuit has held that the "mere existence of filing fees, which are required in many civil law countries, does not render a forum inadequate as a matter of law." *Altmann v. Republic of Austria*, 317 F.3d 954, 972 (9th Cir. 2002); *see also Nai-Chao v. Boeing Co.*, 555 F. Supp. 9, 16 (N.D. Cal. 1982) (holding Taiwan to be an adequate forum despite filing fees amounting to one percent of claim and an additional one-half percent for each appeal), *aff'd sub nom Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir. 1983). Other circuits have reached similar conclusions. *See, e.g., Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1353 (1st Cir. 1992) (despite fifteen percent cost bond requirement, Turkey held to be an adequate alternative forum); *Wien Air Alaska Inc. v. Brandt*, No. 01-10450, 2001 WL 1085140, at *1 (5th Cir. Sept. 5, 2001) (Germany was an adequate forum, despite a filing fee of one percent of the total recovery sought); *Satz v. McDonnell*, 244 F.3d 1279, 1283 (11th Cir. 2001) (Argentina held to be an adequate forum, despite filing fees); *Overseas Partners, Inc. v. PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti*, 15 F. Supp. 2d 47, 55 (D.C. Cir. 1998) (cost bond of ten percent of the amount at issue did not render Turkey an inadequate forum).

Plaintiff has not cited any cases where a forum non conveniens motion was denied because of filing fees or related expenses imposed by an alternative forum.[4] (*See* R. 65, Pl.'s Mem. in Opp'n at 17-18.) Instead, Plaintiff tries to distinguish this case from the aforementioned *Mercier* decision, where the court held that a Turkish bond requirement of fifteen percent of the recovery sought could not be considered excessive. (*Id.* at 18.) Plaintiff suggests that the present case differs from *Mercier* because here the filing fee is in essence a "tax" rather than a fee designed to cover court costs. (*Id.*) The Court can see no meaningful difference, however, given that Plaintiff can recover the filing fee if it ultimately prevails in the litigation. (*See* R. 58, BAEF's Mot., Ex. 4 at 135.)

For these reasons, the Court concludes that Bulgaria's filing fee requirements do not render their courts inadequate to resolve this dispute.

        **b.**     **Administrative & Substantive Capacity**

Plaintiff next argues that Bulgarian courts are not adequate because of their administrative and substantive limitations. (R. 65, Pl.'s Mem. in Opp'n at 19.) In support of this assertion, Plaintiff offers as evidence the fact that when it attempted to file a complaint similar to the one filed in the present case with the District Court in Bulgaria (while this case was pending), the court deemed the complaint to be inadequate. (*Id.* at 7-8, 19.) Upon review, however, the Bulgarian court found that the complaint *as presented* was unacceptable because it was prepared in accordance with and alleged violations of American, rather than Bulgarian, law.

---

[4] The Court notes additionally that the $1.2 million filing fee is driven in part by Plaintiff's request for treble damages under RICO. (*See* R. 22, First Am. Compl. at 20.) Because there is no Bulgarian equivalent of RICO (discussed in more detail in Section 2(b) below), it is not clear that the damages sought in a Bulgarian suit would be as high as they are here, so that the filing fee may be significantly less than $1.2 million. The Court notes additionally that Bulgarian law provides a process for fee waiver, although it is not clear whether the provision applies to corporations like Plaintiff, or whether Plaintiff would be financially eligible. Bulgarian Code Civ. P., art. 83.

(R. 65, Pl.'s Mem. in Opp'n, Ex. 7B.) Plaintiff was given the opportunity to correct these flaws, and to re-file according to Bulgarian laws, but offers no evidence that it ever attempted to do so. (*Id.*)

Plaintiff nevertheless asserts that the Bulgarian courts are inadequate for other reasons, including the lack of a Bulgarian equivalent to our federal RICO statute, the young age of Bulgarian judges, the size of the courtrooms, and the inability to litigate all of the alleged claims in a single proceeding. (R. 65, Pl.'s Mem. in Opp'n at 8-12, 19.) However, even with these limitations, there exist Bulgarian laws which would allow the recovery of damages on at least some of the claims presented here. Indeed, one of Plaintiff's claims alleges a violation of Bulgarian law, and certainly this claim could be raised in a Bulgarian court. (*See* R. 22, Pl.'s First Am. Compl. ¶¶ 103-09.) Additionally, Defendants' Bulgarian legal expert points to several claims under which Plaintiff could seek recovery in Bulgaria, including a tort claim against BAEF, several claims under contract law, and criminal claims which could result in an award of damages to Plaintiff. (R. 58, BAEF's Mot., Ex. 2 ¶¶ 20-22 & Ex. 4 at 57-136.) Although Plaintiff points out that no RICO claim could be brought in the Bulgarian courts, the non-existence of a RICO equivalent does not, by itself, render an alternative forum inadequate, particularly where the plaintiff will be able to pursue related claims for fraud, breach of fiduciary duty, or the like. *See, e.g., PT United Can Co., Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998); *Kempe v. Ocean Drilling & Exploration Co.*, 876 F.2d 1138, 1144-45 (5th Cir. 1989); *Lexingon Ins. Co. v. Forrest*, 263 F. Supp. 2d 986, 1000 (E.D. Pa. 2003). Defendants' expert opines that even though there is no RICO statute in Bulgaria, Plaintiff could nonetheless seek redress for the RICO-related claims under Bulgarian contractual law. (R. 58, BAEF's Mot.,

Ex. 2 ¶¶ 20-22 & Ex. 4 at 73-74.) In short, the Court concludes that Plaintiff has "some potential avenue for redress" in the Bulgarian courts. *See Kamel*, 108 F.3d at 803.

  c. **Corruption**

Plaintiff next argues that the Bulgarian courts are too corrupt to resolve the present dispute in a fair manner. (R. 65, Pl.'s Mem. in Opp'n at 20.) A litigant asserting inadequacy of a foreign court based on corruption must make a "powerful" showing. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1179 (9th Cir. 2006). Courts are wary of "conclusory attacks" on the integrity of foreign courts, given "the concerns that censures of this kind raise if endorsed by our courts, especially when based on bare aspersions or expansive generalizations." *Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507, 525 (S.D.N.Y. 2006); *see also Leon v. Miller Air, Inc.*, 251 F.3d 1305, 1312 (11th Cir. 2001) (general accusations of corruption held insufficient). Thus, concrete evidence is necessary to support a claim of corruption, such as testimony of an expert witness, including attorneys who have practiced law in the forum at issue, who can cite specific examples of court corruption of which they have personal knowledge, or other such reliable evidence. *In re Factor VIII or IX Concentrate Blood Products Litig.*, 531 F. Supp. 2d 957, 981 (N.D. Ill. 2008). Editorials, law review articles, opinion surveys, and general reports "are no substitute for evidence of judicial corruption." *Id.*

Here, in support of its corruption claim, Plaintiff points to the testimony of the legal experts. (R. 65, Pl.'s Mem. Opp'n at 20-21.) However, Plaintiff's expert witness Vladimir Skochev, an attorney who specializes in civil and commercial litigation in Bulgaria, was asked during his deposition whether his opinion that the Bulgarian legal system is incapable of providing a fair hearing applied generally or to the specific case at hand. (R. 65, Pl.'s Mem. in Opp'n, Ex. 3A at 29.) He replied that his opinion applied "in general." (*Id.*) Plaintiff's other

legal expert, Bulgarian lawyer Maria Slavova, acknowledged that it is possible to get a fair trial in Bulgaria. (*Id.*, Ex. 4A at 16-17.) Although there is evidence before the Court that corruption has been a problem in Bulgaria, it falls short of showing that Bulgaria is so rife with corruption that it cannot adequately resolve this dispute. *Compare Eastman Kodak Co. v. Kavlin*, 978 F. Supp. 1078, 1084 (S.D. Fla. 1997) (Bolivian courts found inadequate where there was evidence that criminal charges had been filed against plaintiff's employees in Bolivia to extort a commercial settlement of the parties' dispute) *with Mercier*, 981 F.2d at 1351 (finding Turkish courts adequate despite general reports of bias against women); *Banco Mercantil, S.A. v. Hernandez Arencibia*, 927 F. Supp. 565, 567-68 (D.P.R. 1996) (finding judicial system of Dominican Republic adequate despite general evidence of corruption).

The articles Plaintiff has provided are also somewhat vague, with one study indicating that although the perception that Bulgarian courts are subject to some "informal" outcome-seeking by litigants is higher than in other formerly Communist countries, actual exposure to such behavior is quite rare, and is not significantly greater than the other countries included in the survey. (R. 65, Pl.'s Mem. in Opp'n, Ex. 6A.) This data may be more indicative of a general attitude of skepticism that Bulgarians have toward the judiciary rather than to actual incidents of corruption. As another article provided by the Plaintiff states, "Bulgarians are among the most pessimistic respondents in Transparency International's latest corruption barometer survey . . . ." (*Id.*, Ex. 6B.) This pessimism may, however, be somewhat unfounded; the article goes on to explain that "only 7% of Bulgarian respondents have paid a bribe to receive services, compared to [the] 5% average in the EU grouping of countries and 13% across the entire sample." (*Id.*) If the Court were to conclude that such an article supported the contention that Bulgaria is too corrupt to be considered an adequate forum, it would seem to follow that many other countries

throughout the world would be found inadequate as well. Indeed, as the Seventh Circuit has noted, corruption within the judicial sector is a problem "that plagues scores of countries around the globe," including---as the Operation Greylord investigation in Chicago during the 1980s revealed---the United States. *See Manez v. Bridgestone/Firestone N. Am. Tire, LLC*, 533 F.3d 578, 588 (7th Cir. 2008).

Moreover, whatever its past history, Bulgaria was admitted to the European Union ("EU") in January 2007. (R. 58, BAEF's Mot., Ex. 5 at 20.) In order to gain admission to the EU, Bulgaria was required to satisfy the Copenhagen Criteria, which requires, among other things, that a country have stable institutions that guarantee the rule of law. (*Id.*) In admitting Bulgaria, the EU found that the Bulgarian judicial system meets this standard. (*Id.*, Ex. 4 at 114-15.) Bulgaria is also a signatory to the European Convention on Human Rights, which states, "In determination of his civil rights and obligations . . . everyone is entitled to a fair and public hearing within a reasonable time by an independent and impartial tribunal established by law." E.C.H.R., Article 6 § 1. As with all newly admitted countries, Bulgaria's compliance with EU standards will be monitored throughout the first three years of admission. (R. 58, BAEF's Mot., Ex. 4 at 124.) Without convincing evidence that these monitoring systems are inadequate, the Court declines to conclude that the Bulgarian courts are so corrupt as to be inadequate for resolving this dispute. *See PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir. 1998) ("Considerations of comity preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural safeguards."). Accordingly, the Court rejects Plaintiff's argument.

13

For the aforementioned reasons, the Court concludes that Bulgaria is an available and adequate alternative forum, and turns next to an analysis of the public and private interest factors relevant to this case.

## B. Private Interest Factors

The factors pertaining to the private interests of the litigants include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Clerides*, 534 F.3d at 628. The Court is afforded "great latitude" in weighing these factors. *Id.*

Defendants maintain that the private interest factors weigh in favor of dismissal in this case, given that: (1) "essentially all" of the sources of proof in this case are in Bulgaria, including documents relating to the matter, and witnesses to the alleged events underlying Plaintiff's Amended Complaint; (2) unwilling Bulgarian witnesses would not be subject to compulsory process in the Northern District of Illinois, and it would be costly to transport the willing witnesses from Bulgaria; and (3) practical problems such as the potential for duplicative litigation and the need for translation would create great expense and inefficiency if the case were litigated here. (R. 58, BAEF's Mot. at 9-12.)

Plaintiff responds that BAEF documents and witnesses are located in the Northern District of Illinois, and that "modern technology" makes the transfer of documents from Bulgaria to the United States relatively easy. (R. 65, Pl.'s Mem. in Opp'n at 21.) Although some evidence pertaining to BAEF may be located here, there is no denying that the crux of this dispute is between Plaintiff and the Bank, two Bulgarian entities who executed a contract in Bulgaria to fund a Bulgarian construction project. The witnesses and documents pertaining to

these events, and the subsequent Bulgarian court proceedings which Plaintiff contends constituted "extortion," are located in Bulgaria.

Even assuming Plaintiff is correct that some witnesses might choose to voluntarily appear in the United States, there is still the expense and effort involved in transporting them to be considered, as well as the cost and effort involved in translating testimony and documents. *See Mizuho Holding Co.*, 547 F.3d at 751 ("Dragging all those witnesses and documents from Japan to Chicago, supplying interpreters for the witnesses and translators for the documents, and conducting a trial largely on the basis of testimony given through interpreters and of documents translated from their original language, would impose unreasonable burdens not only on the defendants but also on the district court."). Defendants paint a compelling picture of just how costly it would be to litigate this case in the United States; they explain that in just two days of limited jurisdictional discovery, which included deposing three experts in Bulgaria, travel expenses for one attorney totaled approximately $9,000. (R. 58, BAEF's Mot. at 11 n.7.) This figure does not include other expenses, such as the cost of an interpreter, which Defendants estimate to be around $1,900 per day. (*Id.*) These numbers give context to how significant the litigation expenses would be if this dispute were litigated in the United States over the course of a year or more.

After considering both Plaintiff's and Defendants' arguments, the Court finds that the private interest factors, especially the location of the sources of proof and the expense of transporting witnesses, weigh heavily in favor of dismissal.

C. **Public Interest Factors**

The public interest factors to be considered include "the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home;

15

... the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Clerides*, 534 F.3d at 628.

As to court congestion, the average time to trial in the Northern District of Illinois is 30 months, which is not significantly different from the amount of time Plaintiff estimates the case would take to resolve in Bulgaria, which is two to three years. (R. 69, BAEF's Reply at 7 (*citing* http://www.uscourts.gov/fcmstat/index.html); R. 22, Pl.'s First Am. Compl. ¶ 32.) Given the need to translate the relevant Bulgarian documents and testimony of Bulgarian witnesses into English, however, this dispute could actually take more time to resolve in the United States than in Bulgaria. *See McDonald's Corp. v. Bukele*, 960 F. Supp. 1311, 1320 n.11 (N.D. Ill. 1997) ("[T]he need for extensive translation of documents, testimony, and the laws of El Salvador would slow the progress of this case considerably."). Plaintiff argues that the court congestion factor weighs against dismissal, but seems to point back to questions of adequacy in making this assertion. (*See* R. 65, Pl.'s Mem. in Opp'n at 22-23.) Plaintiff states that due to the Bulgarian judges' heavy caseloads and the small size of their courtrooms, it "cannot . . . get a fair litigation of this particular case." (*Id.*) While Bulgarian judges may have heavy caseloads, courts in this District do as well. Likewise, the Court fails to see how the size of a courtroom contributes to the problem of court congestion, at least as it is meant in the context of the forum non conveniens analysis. Upon consideration, the Court finds that this factor weighs slightly in favor of dismissal.

Next, the Court considers the interest in having localized disputes decided at home. Defendants assert that this is a Bulgarian controversy that belongs in Bulgaria. (R. 58, BAEF's Mot. at 12-13.) In support of this contention, they state that "Bulgarian courts have an interest in

16

policing this dispute since the Loan Agreement was entered into in Bulgaria between Bulgarian parties for purposes of financing a Bulgarian residential construction project that would result in sales of residential units to Bulgarians, [and that] obligations under the Loan Agreement were to be performed in Bulgaria, any breaches of the Loan Agreement occurred there, and plaintiff and the Bank entered into a settlement agreement in Bulgaria." (R. 69, BAEF's Reply at 10.) Plaintiff, on the other hand, contends that the local interest factor weighs in favor of keeping the case here, citing this Court's interest in regulating the behavior of one of its businesses, and the lack of interest that Bulgarian courts would have in regulating an American company's compliance with an American statute. (R. 65, Pl.'s Mem. in Opp'n at 23.)

In situations such as this, where a foreign plaintiff is claiming injury in a foreign country and is as a result filing suit against an American defendant with extensive foreign dealings, it is reasonable to assume that an American court has only "a passing interest in the case." *Kamel*, 108 F.3d at 804-05. Although this Court may have an interest in holding BAEF accountable for any alleged statutory violations, Bulgaria has the same interest in regulating the activities of the Bank, and also has an interest in protecting the rights of one of its own corporations. Furthermore, BAEF---the only link to this District--- is only tangentially involved in the dispute; the crux of the dispute is over actions taken by the Bank, a Bulgarian company that does business exclusively in Bulgaria. Along these same lines, the Court agrees with Defendants that because the vast majority of the issues involved in this case pertain to Bulgaria, it would be unfair to burden the citizens of this District by calling on them to resolve this dispute. *See Mizuho Holding Co.*, 547 F.3d at 755 ("[T]o burden Americans with jury duty to resolve an intramural Japanese dispute would be gratuitous"); *Pyrenee, Ltd. v. Wocom Commmodoties, Ltd.*, 984 F. Supp. 1148, 1167 (N.D. Ill. 1997) ("[I]t would be grossly unfair to impose jury duty

on American citizens in this case, considering that all of the relevant actors and most of the relevant conduct took place in Hong Kong, and that the American interest is at best indirect.").

Finally, the Court must consider potential difficulties that might arise as a result of conflicts of law or the application of foreign law. Here, the Loan Agreement provides that it is to be governed by and construed in accordance with Bulgarian law, and at least one of Plaintiff's claims is premised on Bulgarian law. (R. 22, First Am. Compl. ¶¶ 103-09 & Ex. A ¶ 17.07.) A district court's "desire to avoid the burden of mastering a new legal subject" is not by itself "an adequate reason to send litigants packing." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 732 (7th Cir. 2003). However, the Court's legitimate concern with having to "delve into the tenets of an unfamiliar legal system" may tip the scales in favor of dismissal. *Kamel*, 108 F.3d at 805; *see also Mizuho Holding Co.*, 547 F.3d at 751 (affirming dismissal on forum non conveniens grounds based in part on need to apply Japanese law to the dispute).

Plaintiff does not offer anything to dispute the presumption that Bulgarian law would apply to much of the present case, and instead reasons that American laws would likely apply to their claims against BAEF, and that Bulgarian legal experts and translators could be enlisted to assist this Court in understanding claims arising under Bulgarian law. (R. 65, Pl.'s Mem. in Opp'n at 23-24.) This argument is unconvincing. When a court would have to expend "considerable resources" to understand and apply foreign law, dismissal is appropriate. *Hull 753 Corp. v. Elbe Flugzeugwerke GmbH*, 58 F. Supp. 2d 925, 930 (N.D. Ill. 1999) (granting defendant's forum non conveniens motion based in part on the difficulty and expense involved in applying German law to the dispute). For the above reasons, the Court finds that the balance of public interest factors weighs strongly in favor of dismissal.

## CONCLUSION

For the reasons stated above, resolution of the parties' dispute in Bulgaria, rather than in this Court, is far more likely to serve the convenience of the parties and the ends of justice. Bulgaria is both an available and adequate alternative forum, and the balance of private and public interest factors, when considered against the reduced level of deference afforded to Plaintiff's choice of forum, weighs strongly in favor of dismissal. Accordingly, Defendants' motion to dismiss on forum non conveniens grounds (R. 58) is granted. Because the case has been dismissed, the Court does not reach Defendants' remaining arguments in support of dismissal, and accordingly, the other motions to dismiss (R. 59, 60) are denied as moot.

ENTERED:

Judge Ruben Castillo
United States District Judge

Dated: February 24, 2009